CHARLES MAYER et al., Respondents, *v.* ALFRED S. HEIDEL-
BACH et al., Appellants.

Where a pre-existing debt has been actually and absolutely extinguished in
consideration of the transfer of negotiable paper, the transferee is a holder
for value within the rule protecting such a holder against prior equities.

Where a depositor in a bank, having sufficient funds standing to his credit,
tenders to the bank a check in payment for negotiable paper it has for
sale, and the bank accepts the check, charges it against the deposit, can-
cels and files it as a voucher, and delivers over the paper purchased, the
purchaser is a holder for value, the antecedent debt of the bank being *pro
tanto* actually and in fact extinguished.

In an action upon two bills of exchange drawn by defendants, payable to
plaintiffs' order, it appeared that plaintiffs purchased the drafts of the H.
Bank of Indianapolis, with which bank they kept their deposit account;
that plaintiffs gave their checks to said bank in payment for the drafts,
which were accepted by it, charged to plaintiffs in their account, canceled
and held as vouchers, and that at the time, plaintiffs had a balance to
their credit much more than the amount of the checks.   The drafts
were ordered by the H. Bank of defendants, and were mailed to it under
an agreement by which they were to be paid for by remittance by mail,
immediately on receipt.   The H. Bank failed without having made such
remittances, and thereupon defendants stopped payment of the drafts.
The trial court found that the sale was made by defendants to the H.
Bank, the credit given to that firm, and that plaintiffs purchased in good
faith.   *Held,* that plaintiffs were purchasers for value, and so, were
entitled to recover.

(Argued June 13, 1890; decided October 21, 1890.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
the first Monday of December, 1888, which affirmed a judg-
ment in favor of plaintiffs entered upon a decision of the court
on trial without a jury.

This action was brought to recover the amount of two bills
of foreign exchange drawn by defendants, who were bankers
in the city of New York, made payable to the order of plain-
tiffs who were copartners as wholesale merchants carrying on
a mercantile business at Indianapolis.

The trial court found in substance, these facts, among others : The business of plaintiffs' firm required the frequent purchase by it of foreign exchange. They kept no bank account in New York, but kept their account in Indianapolis, with a firm of bankers doing business as Harrisons' Bank. Plaintiffs procured their foreign drafts through said bank, all of which were drawn payable to plaintiffs' order. These drafts said bank procured of the defendants. Plaintiffs when requiring exchange, would give to Harrisons' Bank a written statement of what was required. This said bank would enclose to defendants with a letter directing them to forward the exchange, and upon receipt they would "remit as usual;" on receipt defendants would draw their draft, in accordance with the written paper, and mail it to Harrisons' Bank, which would deliver it to plaintiffs, receiving their check for the amount, and thereupon said bank would send its check on a New York bank to defendants for the amount. All said drafts or bills of exchange were drawn payable to plaintiffs' order and this had been the course of dealing between the parties for about seven years. In accordance with this custom of dealing, the drafts in question were ordered by Harrisons' Bank of the defendants and mailed to it. Upon delivery to the plaintiffs, they drew and delivered to said bank their checks for the amount. At the date of said check, plaintiffs had a balance of credit upon their deposit account with the bank of a much larger amount than the checks. Said checks were charged against said account, entered in the plaintiffs' pass-book as paid, and were afterwards returned to the plaintiffs with the bank's canceled mark thereon. Plaintiffs indorsed and mailed the drafts to their creditors abroad, in payment of goods purchased. Harrisons' Bank did not remit to defendants to cover the drafts, but stopped payment, and soon after went into the hands of a receiver. Plaintiffs had no notice of any defect in the title of Harrisons' Bank to the drafts or notice that said bank had not paid in full for them on delivery, and were not so informed until after the failure. The said drafts were duly presented to the drawees for payment, but pursuant

to instructions from defendants, payment was refused, and thereupon the same were returned to and taken up by plaintiffs. The court also found that said firm doing business as Harrisons' Bank did not procure said drafts for themselves, but for the use and benefit of plaintiffs; that said firm purchased them of defendant, and sold them to plaintiffs, and as a conclusion of law that plaintiffs were *bona fide* holders for value of said drafts.

*Simon Sterne* for appellants. Defendants being the drawers and plaintiffs the payees of the drafts in suit, as between them the want or failure of consideration is an absolute defense. (Daniels on Neg. Inst. § 174; Rand. on Com. Paper, §§ 1, 556, 1875; *Astley* v. *Johnson*, 15 H. & N. 137; *DeBras* v. *Forbes*, 1 Esp. 117; *Bell* v. *Spotts*, 50 How. Pr. 214.) Harrisons' Bank was the agent of plaintiffs to procure the drafts in suit, and plaintiffs are responsible for the failure of their agents to pay for such drafts. (*Fowler* v. *Seaman*, 40 N. Y. 592; *Fairbanks* v. *Mothersell*, 60 Barb. 406; *Horstman* v. *Batzer*, 38 Hun, 367; *Meeker* v. *Claghorn*, 44 N. Y. 352; *Foster* v. *Persch*, 68 id. 401; *Butler* v. *Evening Mail*, 61 id. 634; *Jesup* v. *Steuber*, 75 id. 613; *Kayton* v. *Barnett*, 116 id. 625.) Defendants having parted with the manual possession of their drafts on condition of immediate payment, and such payment not having been made, defendants lost no title to the drafts, and rightfully stopped payment of them. (1 Benj. on Sales, §§ 334, 335; 2 id. § 1126; *Muller* v. *Pondir*, 55 N. Y. 325, 327.) Plaintiffs are not purchasers for value of the checks or drafts in suit. (*Farrington* v. *F. Bank*, 24 Barb. 555, 560; *Pratt* v. *Foote*, 9 N. Y. 463; *Weaver* v. *Barden*, 49 id. 286; *Moore* v. *Ryder*, 65 id. 438; *Lawrence* v. *Clark*, 36 id. 128; *Pratt* v. *Coman*, 37 id. 440.) The transaction between plaintiffs and Harrisons' Bank was in law and in fact the taking by plaintiffs from said bank of the foreign check in suit at most in nominal payment of an antecedent debt due from the bank to plaintiffs. (10 Wall. 155; 107 N. Y. 184; 49 id. 293; *Bank of The Repub-*

*lic* v. *Millard*, 10 Wall. 152–155 ; *Weaver* v. *Barden*, 49 N. Y. 290 ; *Coddington* v. *Bay*, 20 Johns. 637 ; *Cloyes* v. *Cloyes*, 36 Hun, 145 ; *Muller* v. *Pondir*, 55 N. Y. 325 ; *Barnard* v. *Campbell*, 55 id. 466 ; 58 id. 73.) Defendants' exception to the refusal of the court to find that it is the custom of dealers in exchange as to exchange sold in the city of New York to part with the manual possession of the foreign bill or check to persons of good credit or standing without exacting payment until the day of sailing of the steamer which would carry the foreign bill, under an implied condition that if said payment is not made said foreign bill or check shall be countermanded and payment of it stopped, and that no credit is intended to be extended by complying with said custom, was well taken. (*DeBras* v. *Forbes*, 1 Esp. 117 ; 1 Daniels on Neg. Inst. 152 ; *Whitehouse* v. *Moore*, 13 Abb. Pr. 142 ; *Hartshorn* v. *U. M. Ins. Co.*, 36 N. Y. 172 ; *Walls* v. *Bailey*, 49 id. 464 ; *Johnson* v. *DePeyster*, 50 id. 666 ; *F. & M. Bank* v. *Sprague*, 52 id. 605 ; *Bissel* v. *Campbell*, 54 id. 353.) Defendants' exception to the finding that defendants sold said drafts to Harrisons' Bank is well taken. (*Meeker* v. *Claghorn*, 44 N. Y. 349 ; *Foster* v. *Persch*, 68 id. 402.)

*James C. Foley* for respondent. Where the drawer of a bill of exchange places it in the hands of a third person, with the indicia of title, and he delivers it to the payee named in the bill, and receives payment from the payee at the time of delivery, the payee or purchaser acquires good title to such bill as against the drawer, and can enforce it against him. (*Monroe* v. *Broedier*, 8 C. & B. 862 ; Pars. on Bills & Notes, 181 ; *Potrier* v. *Morris*, 2 El. & Bl. 89 ; *Lentilhon* v. *Vorwerck*, H. & Den. Supp. 443 ; *Lally* v. *Colgate*, 10 J. & S. 544 ; *McNeil* v. *T. N. Bank*, 46 N. Y. 329 ; *Nixon* v. *Brown*, 57 N. H. 34 ; *Smith* v. *Clews*, 105 N. Y. 286 ; *F. N. Bank* v. *Stiles*, 22 Hun, 339 ; *Moore* v. *M. N. Bank*, 55 N. Y. 41 ; *Goodwin* v. *Roberts*, L. R. [10 Eq. Div.] 237 ; *Rumball* v. *M. Bank*, L. R. [2 Q. B. Div.] 194.) The plaintiff's checks, drawn against their ample deposits in Harrisons' Bank and

given to that bank in payment of the drafts in suit at the time the said drafts were delivered to them, were a good and valuable consideration for such drafts, and equities, of which they had no notice, were thereby cut of. (*B. & N. R. R. Co.* v. *N. Bank,* 102 U. S. 31; *P. Ins. Co.* v. *Church,* 81 N. Y. 226; *N. Y. I. Works* v. *Smith,* 4 Duer, 377; *Gould* v. *Segree,* 5 id. 260; *Bank* v. *Guilland,* 23 Wend. 311; *Stillheimer* v. *Meyer,* 33 Barb. 217; *Farrington* v. *F. Bank,* 24 id. 554; *Mayer* v. *Mode,* 14 Hun, 155; *Day* v. *Saunders,* 37 How. Pr. 536; *Brown* v. *Leavit,* 31 N. Y. 113; *Young* v. *Lee,* 2 Kern. 551; *R. S. Bank* v. *Krug,* 102 N. Y. 33; Daniels on Neg. Inst. 831; *Just* v. *N. Bank,* 4 J. & S. 274; 56 N. Y. 478; *Bank of S.* v. *Babcock,* 21 Wend. 449; *Waydell* v. *Leuer,* 3 Den. 414; *G. Bank* v. *Penfield,* 69 N. Y. 502; *F. N. Bank* v. *Johns,* 46 Am. Rep. 506; *Pratt* v. *Coman,* 37 N. Y. 442; *Scott* v. *Betts,* H. & D. Supp. 370; *Newman* v. *Frost,* 52 N. Y. 424; *Schepp* v. *Carpenter,* 51 id. 602; 2 Hare's L. C. 240; *Harrison* v. *Wright,* 100 Ind. 515; *Oddie* v. *N. C. Bank,* 45 N. Y. 735; *Bank of Republic* v. *Millard,* 10 Wall. 152; *F. N. Bank* v. *Leach,* 52 N. Y. 350; *Coates* v. *Bank of E.,* 91 id. 20; *Dykers* v. *L. M. Bank,* 11 Paige, 612; Morse on Banking, 238, 280, 307; *Eyles* v. *Ellis,* 4 Bing. 112; *Bridges* v. *Garrett,* 18 West. Rep. 815; *M. Bank* v. *Lloyd,* 90 N. Y. 530; *People* v. *M. Bank,* 78 id. 269; *Levy* v. *Bank of U. S.,* 4 Dal. 233; *N. Bank* v. *Wells,* 79 N. Y. 496; *Goodman* v. *Roberts,* L. R. [10 Exch. Div.] 337.) As Harrisons' Bank was a principal in the transactions, a consideration good as between the plaintiffs and that bank will cut off prior equities. (*Paddon* v. *Taylor,* 44 N. Y. 375; *Clothier* v. *Adriame,* 51 id. 322; *Stevens* v. *Bd. Education,* 79 id. 184; Story on Agency, §§ 92–94, 104–106, 227, 228; *Horsfall* v. *Fauntleroy,* 10 B. & C. 755; *Wardrop* v. *Dunlop,* 1 Hun, 325; 59 N. Y. 634; 2 Kent's Comm. § 613; Byles on Bills, 32, 35, 36; *Higgins* v. *Moore,* 34 N. Y. 417; *Eng.* v. *Greenbaum,* 2 Hun, 136; 64 N. Y. 642; *Williams* v. *Walker,* 2 Sandf. Ch. 325; *Bridenbeck* v. *F. Bank,* 32 Barb. 9; *Wheeler* v. *Guild,* 20 Pick. 545.)

On a sale of personal property, a condition that title shall not pass to the vendee until the property is paid for, is not available against a *bona fide* purchaser from such vendee. (*Comer* v. *Cunningham,* 77 N. Y. 556; *Wait* v. *Greene,* 36 id. 556; *Crocker* v. *Crocker,* 31 id. 50; *Dows* v. *Kidder,* 84 id. 128; *M. C. C. R. R. Co.* v. *Phillips,* 60 Ill. 190; *Brundage* v. *Camp,* 42 id. 18; *Saltus* v. *Everett,* 20 Wend. 276; *Buck* v. *Grimshaw,* 1 Edw. Ch. 140.) It was not error to refuse to find as to the alleged custom to deliver bills of exchange without payment on delivery. (83 N. Y. 100; *C. E. Bank* v. *N. Bank,* 91 id. 81; *S. Bank* v. *N. Bank,* 67 id. 458; *Fuller* v. *Robinson,* 68 id. 306; *Higgins* v. *Moore,* 34 id. 417; *Bassett* v. *Lederer,* 1 Hun, 274; *Gallup* v. *Lederer,* Id. 285; *Barnard* v. *Kellogg,* 10 Wall. 383; *Bowen* v. *Newell,* 8 N. Y. 7, 195; *Woodruff* v. *M. Bank,* 25 Wend. 265; *Wheeler* v. *Newbould,* 16 N. Y. 393; *Dykers* v. *Allen,* 7 Hill, 498.) The good faith of the plaintiffs is shown beyond any doubt. (*Grant* v. *Vaughn,* 3 Burr, 316; *Utter* v. *Rich,* 10 A. & E. 764; *Raphael* v. *Bank of Eng.,* 17 C. B. 161; *Backhouse* v. *Harrison,* 5 B. & A. 1074; *Cook* v. *Jadis,* 5 B. & L. 909; *McNeil* v. *F. N. Bank,* 46 N. Y. 324; *Moore* v. *M. Bank,* 55 id. 41; *D. C. Ins. Co.* v. *Hatchfield,* 78 id. 228; *Seybel* v. *N. C. Bank,* 54 id. 289; *Magee* v. *Badger,* 34 id. 247; *B. Bank* v. *Hoye,* 35 id. 65; *Welch* v. *Sage,* 47 id. 143; 2 Pars: on Bills, 42; *B. & N. R. R. Co.* v. *M. Bank,* 102 U. S. 31; *Goodman* v. *Simons,* 20 How. [U. S.] 343; *Murray* v. *Lardner,* 2 Wall. 110.)

FINCH, J. Whether the draft of the defendants upon their foreign correspondent was sold by them to the plaintiffs, who were named as the payees therein, or to Harrisons' Bank which gave the order for the exchange and promised to pay for it, became a material inquiry upon the trial because of the failure to pay the purchase-money. Very much was possible to be said in behalf of either inference, and it was said. Upon the argument no circumstance or suggestion was omitted which could affect a wavering balance, but the very thorough-

ness of the discussion served to strengthen our conviction that the question was one of fact, a problem of conflicting inferences, properly submitted as such, and controlled by the finding of the court. That finding established that the sale was to Harrisons' Bank, and that the credit, if any, was given to that firm, although the draft by their direction was made to the order of the plaintiffs for whom the Harrisons bought it and to whom they sold it.

Some question is made over the evidence leading to that result, and about the title of Harrisons' Bank to the exchange, assuming that firm to have been the vendees. Proof was offered and received, under objection, of an alleged custom of dealers in foreign exchange to sell only upon a cash payment, and deliver the drafts conditionally upon an expected remittance of the price; the purpose being to justify the act of defendants in stopping payment when the vendees failed to remit in accordance with their promise. The court was asked to find the existence of such a custom and refused, and the defendants took an exception. So far as any custom was proved it was immaterial. Some of the evidence indicated a usage in the city of New York among sellers of foreign exchange of delivering the drafts before the next sailing day of the steamer and expecting payment on that day, but so far from such custom making the delivery conditional until payment, the evidence indicates the contrary. It shows a habit of exacting the cash except where the standing of the purchaser made a credit until the sailing day prudent and safe; and no single instance of stopping payment of the delivered drafts was shown. What there was of the usage seems quite inapplicable to sales out of the city and to country banks or inland dealers, and was not such as to raise a presumption of knowledge on the part of Mayer & Co. In all their dealing nothing had ever occurred tending to bring home to them knowledge of a usage which seems to have been local in its character. But beyond that, the plaintiffs have been found to be purchasers for value and in good faith from Harrisons' Bank of the drafts in controversy, and if that be true the equities between the

original parties are cut °off and become immaterial. And so the correctness or error of that finding has been the principal subject of inquiry upon this appeal.

The respondents rely upon two propositions which have thus far prevailed : (1) That the actual payment and absolute discharge of an antecedent debt is a valuable consideration for the transfer of commercial paper, and cuts off prior equities ; and (2) That the acceptance by a bank of deposit of the check of a depositor over its counter actually cancels and discharges the deposit to the amount of the check.

I have no doubt as to the soundness of the first proposition. It was explicity conceded in *Coddington* v. *Bay* (5 Johns. 57; 20 id. 637), which originated the difference between the courts of this state and the concurring views of the federal court and those of England. While it was in that case ruled that the transfer of negotiable paper as collateral security merely for an antecedent debt did not make the creditor a holder for value within the rule cutting off prior equities, it was yet asserted that such result followed where, among other things, some existing debt was satisfied thereby. And that, I think, was a natural and logical conclusion from the reasoning upon which the decision rested. The argument was that the holder of the paper merely as collateral lost nothing by its failure, since his debt all the time remained, his original position was unchanged, and he had simply failed to get an added security, himself parting with nothing. It is apparent that the reasoning fails, whenever, as a result of the new contract, the original debt has been actually extinguished, when the paper received has been both transferred and accepted as payment, and the debt has been discharged within and by force of the acts and concurring intention of both parties. And so we have steadily decided. (*Bank of St. Albans* v. *Gilliland*, 23 Wend. 311; *Youngs* v. *Lee*, 12 N. Y. 551 ; *Philbrick* v. *Dallett*, 2 J. & S. 388; *Gould* v. *Segree*, 5 Duer, 260 ; *Brown* v. *Leavitt*, 31 N. Y. 113; *P. Ins. Co.* v. *Church*, 81 id. 218; *Button* v. *Rathbone, Sard & Co.*, 118 id. 666.) These cases, and many more like them, however, differing in their facts, and although

the earlier ones have been more or less criticized, yet agree, as I read them, in the doctrine that where the pre-existing debt is actually and absolutely extinguished in consideration of the negotiable paper transferred, the transferee is protected against prior equities. In asserting that as the result of the decisions in this state and elsewhere, the federal court in *B. & N. R. R. Co.* v. *N. Bank* (102 U. S. 31), and Mr. Daniels in his textbook on negotiable instruments (§§ 831, 832) are fully and fairly supported by the line of adjudged cases.

But the real and more difficult proposition secondly asserted by the respondents springs up at this point, and requires us to consider when the antecedent debt *is* absolutely extinguished and what proof sufficiently establishes that fact; for the debt, though extinguished in form, may prove to be discharged conditionally and not absolutely. The answer depends upon the authorities from which we ought not to depart, but which have been very differently construed by the respective counsel.

The respondents rely upon *Pratt* v. *Foote* (9 N. Y. 463, followed in *C. Bank* v. *U. Bank*, 11 id. 203), and a line of subsequent cases which more or less have been controlled by it. That case declared that the acceptance by a creditor from his debtor of a new security or obligation for an old debt, and the acceptance by a bank of a check drawn upon itself in payment of a note were entirely different transactions; that the former is the mere substitution of one executory agreement or obligation for another, and there is no extinguishment of the present debt, unless there is an express agreement to accept the new obligation or security as a satisfaction of the old; but that when the bank upon which a check is drawn accepts it upon its own debt, the same act of acceptance pays the check to the payee and the debt to the bank, and the transaction is the same in effect as if the money was first paid to the payee of the check and instantly repaid to the bank in exchange for the paper bought. This view of the transaction necessarily implies that what is done between the parties sufficiently proves a payment and extinguishment of the bank's debt without any added evidence of an express agreement to that effect, or any

further or other act.  We must not fail to observe that other and additional circumstances bearing upon the intent of the parties may change the inference, but the case cited decides that where the bank accepts its customer's check for a note due to it, and charges the check to the proper account, and turns it into a voucher by cancellation, the debt is extinguished on both sides.  It is argued at very considerable length that the check accepted by the bank in the case cited was that of a third person, and not the check of the maker of the note, and that the same thing is true of all the cases relied upon by the respondent.  That is true to some extent and in some modified sense.  In the case cited, the check offered and accepted was the check of Scudder, who was first indorser upon the note, and contingently liable thereon, and who evidently drew his check to discharge that liability.  While the check was tendered by Foote, the maker, it was nevertheless that of one of the parties to the note and tendered and accepted in payment thereof.  In *Youngs* v. *Lee* (12 N. Y. 552), the creditor surrendered an old note not yet due in exchange for a new note with an indorser, and was held to be a holder for value, because the debt was extinguished.  Many of the cases to the same purport were reviewed in *P. Ins. Co.* v. *Church* (81 N. Y. 218), and it was there intimated that the common understanding and usage attending the dealing with banks might well affect the inference to be drawn.  I do not find that the doctrine of *Pratt* v. *Foote* has ever been questioned or overruled.  The payment in that case was held to be absolute and not conditional.  The check was tendered in payment of the note and accepted as such, and the transaction in that manner closed.  So here the check was tendered in payment for the draft purchased, and accepted and canceled as payment. There can be no doubt that such was the concurring intention of both parties to the contract which they executed, and the inference would hardly be more certain if the intention had been framed in words and taken the shape of an express agreement.  I have become convinced that the form of the transaction should not control and modify its substance.  If the

Harrisons on presentation of the check had paid the money, and the creditor had instantly paid it back in exchange for the draft purchased there would have been no question about the right of the purchaser. How can we insist that the right is modified because the formal delivery and return of the money was omitted, the substantial result remaining the same?

I have examined the numerous authorities cited, but question the wisdom of dwelling upon them, since they vary in many respects from the precise facts before us. I prefer to hold upon the authority of *Pratt* v. *Foote*, strengthened, as I think it is, by the suggestions of *P. Ins. Co.* v. *Church*, that where the depositor in a bank, having sufficient funds standing to his credit, tenders his check to that bank in payment for negotiable paper which it has for sale, and the bank accepts the check and charges it against the deposit and files the check as its voucher and delivers over the paper purchased, the holder of that paper is a holder for value, because the antecedent debt is *pro tanto* actually and in fact extinguished. The facts of the transaction show that to have been the concurring intention, exhibit a contract executed and completed and left in no respect executory or conditional; and while the check may be regarded as a request to charge in account, it is a request to a bank of deposit which operates upon the amount of the deposit and effects the actual payment intended on both sides. The position of the depositor is materially changed by the transaction. Before his purchase he had its amount on deposit payable to him on demand, but after his purchase no such deposit remained subject to his check or payable to him at all. If he had held the bank's note for the deposit and surrendered that in exchange for the paper bought, it is conceded that he would have been a purchaser for value. But the note itself would be only a voucher or evidence of the debt; and why should a surrender of that voucher have greater effect than delivery of the check? Because the depositor has no note but, as is the customary method, allows the bank to keep both sides of the account, and so has no voucher to surrender, must we give no force to the

delivery of the check and its acceptance by the bank which equally cancels so much of the deposit, and equally serves as the bank's voucher for the payment? We cannot say that the depositor has parted with nothing in consideration of the paper received when, in the customary mode of dealing with banks, he has drawn out his deposit and appropriated it to his new purchase; for, what he has for a voucher or evidence of the bank's debt to him is simply the bank's credit on its books, and when by his own act he destroys and cancels that credit he parts with the voucher he had as effectively as if, holding the bank's note, he had parted with that. In view of the customary methods which obtain between banks and their depositors, the inference of actual payment and extinguishment of the debt where the check is accepted, charged in account, cancelled upon the file iron, and filed as a voucher, is proper to be drawn. It seems to be not even essential to be able to say that the debt extinguished could not be revived under any form of remedy. (*P. Ins. Co.* v. *Church*, *supra*.)

The question of good faith on the part of plaintiffs was one of fact which has been found in their favor. It is our duty, therefore, to sustain the decision of the courts below.

The judgment should be affirmed, with costs.

All concur, except RUGER, Ch. J., and EARL, J., dissenting.

Judgment affirmed.