## BLAIR v. HAGEMEYER et al.

(Supreme Court, Appellate Division, First Department.    February 25, 1898.)

1. BILLS AND NOTES—DIVERSION—PROVINCE OF JURY.
    Where, in an action on a note, there was evidence that defendants stated to plaintiff, before the purchase of the note, that they originally gave it in payment for land, that it was all right, and would be paid at maturity, and also testimony of the payee that it was originally given in payment for land, the question whether the note was diverted paper, as claimed by defendants, was for the jury.

2. SAME—ESTOPPEL TO DENY CONSIDERATION—EVIDENCE.
    Evidence that defendant stated to plaintiff, before he purchased the note sued on, in response to inquiries by the latter, that it was originally given in payment for land, was all right, and would be paid at maturity, tended to raise an estoppel, precluding him from disputing the consideration of the note at its inception.

3. SAME—BONA FIDE INDORSEE—CONSIDERATION.
    The satisfaction of a judgment, representing an indebtedness of the owner of a note to his indorsee, is a sufficient consideration to constitute the latter a bona fide holder thereof for value.

4. SAME—NOTICE—BAD FAITH—EVIDENCE.
    Though a note sued on was diverted paper, a recovery thereon by an indorsee cannot be defeated, unless it is shown that he had notice of the diversion, or there is clear evidence of bad faith in his taking the paper.

Appeal from trial term.

Action by John J. Blair against George Hagemeyer and others. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Rush Taggart, for appellant.
W. C. Beecher, for respondents.

PATTERSON, J. This action is upon a promissory note for $7,500, made by the defendants Hagemeyer, in their firm name of George Hagemeyer & Sons, payable to the order of William H. Chew, and indorsed by him and Charles C. Cokefair. The defendants Hagemeyer and Chew answered the complaint. The defendant Cokefair made default. Pending suit, Hagemeyer & Sons made an assign-

ment for the benefit of creditors to one Hutchinson, who, by permission of this court, intervened and interposed an answer. The amended complaint contains the ordinary allegations proper to an action of this character against maker and indorsers of a negotiable instrument, and also sets up the introduction in the suit of the assignee Hutchinson. The answers of Hagemeyer & Sons and of their assignee are substantially the same. The making and indorsement of the promissory note are admitted; but it is alleged as a separate defense that the note sued upon was one of a series made by the defendants Hagemeyer & Sons to the order of Chew, delivered without other consideration than for the purpose of having the same discounted, under an agreement with Chew, whereby the proceeds of the discounts were to be used in paying off and retiring certain other promissory notes which had theretofore been made by the firm of Chew & Eadie, composed of the defendant Chew and one Eadie, and which notes had belonged to and had been indorsed by the firm of George Hagemeyer & Sons. Those answers then proceed to set up that Chew, without consideration, delivered the note sued upon to one Cokefair, and that no part of the proceeds had been applied, as required by the agreement alleged to have been made between Chew and Hagemeyer & Sons. That defense is, in substance, one of a diversion of commercial paper from the purpose for which it was issued. The same answers contain a further separate defense that the note sued on was delivered by Chew to Cokefair on a prior unlawful and usurious agreement, whereby Cokefair was to, and did, retain 50 per cent. of the face value of the note or thereabouts. That defense was intended to raise the issue of the note having no legal inception until its transfer by Chew to Cokefair, and that it was usurious in that inception. These answers also contain a further defense that Cokefair sold and delivered the note to the plaintiff upon a prior corrupt, unlawful, and usurious agreement, whereby the plaintiff paid to Cokefair the sum of $4,000, and retained, for his own benefit and account, the balance of the notes, to be applied upon a prior and personal indebtedness of Cokefair to the plaintiff, all of which was without the knowledge or consent of the plaintiff or of the assignee; the last defense being intended to present the question of the note having no legal inception until Cokefair disposed of it to the plaintiff upon the alleged unlawful and corrupt agreement. The answer of the defendant Chew admits the indorsement and delivery of the note by him to Cokefair, and that he (Chew) has not paid the amount of the note, and then sets up affirmatively that the note was delivered to the plaintiff, and had no legal inception until such delivery, and that the plaintiff discounted the note, and saved and reserved to himself more than 6 per cent. of the face value of the note, which transaction on his part was usurious.

Upon the issues framed by these answers, the case came on for trial, and, for some reason not disclosed, the plaintiff, instead of resting upon the presumption of bona fides resulting from his possession of the promissory note, undertook to show by witnesses the circumstances under which Blair, the plaintiff, took the note, and also the circumstances under which it was issued originally, and also state-

ments and admissions of the makers of the note, made before the plaintiff took it. The witness Roseman testified that he was the cashier of the plaintiff, and that he purchased the note for the plaintiff; that, before purchasing it, he called upon Hagemeyer & Sons with a copy of the note, saw Mr. Hagemeyer, one of the makers, referred to a record, compared the note with the record, and said that the note was all right, and would be paid at maturity; and also stated that Hagemeyer & Sons had purchased certain timber lands, and that the note had been given in part payment for those lands. The witness then testified that he bought the note from Cokefair, the purchase being consummated after the interview with Mr. Hagemeyer. He also stated that the consideration paid to Cokefair consisted of cash by check of $3,258.66, a satisfaction piece of a judgment of one Fox against Cokefair for $3,458.87, the surrender of certain bonds at a value of $543.72, and $50 for the attorney's fee with respect to the Cokefair judgment. These items altogether amount to the sum of $7,311.25; the difference between that amount and the face value of the note, $188.75, being the discount at 6 per cent. There is some vagueness with reference to the value of the surrendered bonds,—that is to say, the $543.72 item; but there is proof of their being accepted by Cokefair at that figure. The evidence of Chew was directed principally to the consideration upon which the note was originally issued. He testified at one time positively that the note was issued in part payment for land situated in North Carolina, and sold by him to Hagemeyer, and said that it was not issued to take up one of the notes of Chew and Eadie; and in another part of his examination he testified that the note in suit was given substantially as claimed by the Hagemeyers. These were contradictions to be looked at very seriously, for the first version Chew gave of the consideration for which the note was originally issued accords exactly with what the witness Roseman testified Hagemeyer told him before he purchased the note for Blair. The testimony of Cokefair is substantially to the same effect, concerning the purchase of the note by the plaintiff, as that of the witness Roseman. When the proofs were all in, counsel for each of the parties requested the court to direct a verdict, which requests were taken under advisement, and subsequently denied, and the court directed that the case go to the jury. But, while counsel for one of the parties was addressing the jury, the learned judge inquired whether the request of each party for the direction of a verdict was still open. Counsel for the defendants replied affirmatively. Counsel for the plaintiff stated that his motion for the direction of a verdict in his favor was withdrawn. Thereupon the court took the case from the jury, and dismissed the complaint, on the ground that the note sued upon was diverted paper, and that, the plaintiff having failed to show that he was the owner in good faith for value of the note, the complaint must be dismissed. From the judgment entered upon that dismissal, this appeal is taken.

It will thus be seen that the learned judge disposed of the case by determining himself that the note sued on was, as matter of fact, diverted paper, and that the plaintiff had failed to show that he was

a holder for value of that paper.    In taking that action he was manifestly wrong.    The issue of fact as to the purpose for which the note was originally issued was peculiarly a matter for the consideration of the jury.    There was testimony of admissions by one of the makers of the note, and of at least one declaration of the witness Chew, the indorser of the note (although the latter subsequently qualified it), that it was issued originally in payment for land which Chew had sold to Hagemeyer; and, on that evidence, the plaintiff was entitled to go to the jury either as to the fact of the consideration of the note at its inception, or as raising an estoppel against Hagemeyer from disputing that consideration; the evidence of Roseman being that, before the note was purchased from Cokefair, those inquiries were made of the maker of the note, upon the faith of the answers to which the note was bought, and, as against Chew, the only defense interposed by his answer being that the note had no legal inception until it was delivered to the plaintiff, who discounted it at a usurious rate.    The question of fact relating to the original inception of the note was the vital one; for, if it had a business inception at the time it was made, then it is entirely immaterial, so far as Chew is concerned, what the plaintiff gave for it subsequently.    As regards Chew, it was for the jury to pass upon his credibility, and to say whether they would believe his first or his last statement, respecting the consideration for the note, and when it had its inception.

The learned judge was also incorrect in taking the case away from the jury on the ground that the plaintiff failed to show that he was the owner in good faith, and for value, of the note in suit.    It would seem that this question arose in the mind of the court because of some doubt entertained respecting the Fox judgment and the ownership of that judgment by Blair at the time the satisfaction piece was delivered to Cokefair.    As the case stood, there was evidence to show that the plaintiff was a bona fide holder for value.    The circumstances under which the note was bought were sworn to by Roseman; and, if his story was to be believed, there could be no doubt of the plaintiff being a bona fide holder for value.    The purchase was made from Cokefair, who held the note.    Money and bonds and the surrender of a judgment against Cokefair were the consideration.    So far as the judgment was concerned, the extinguishment of the debt to Cokefair was a good consideration, pro tanto, for the note.    Mayer v. Heidelbach, 123 N. Y. 332, 25 N. E. 416.    The debt of Cokefair on the Fox judgment was paid, and that judgment was satisfied.    The question of the ownership of that judgment by Blair was not in any way involved.    It did not appear that the satisfaction piece was signed by Blair.    The presumption is that it was executed by Fox; but it was for an indebtedness which was sworn to as being one of Cokefair to Blair, Fox being apparently a nominal plaintiff.    It was therefore shown that the plaintiff was a bona fide holder for value of this note; and, even if it were diverted paper, it was incumbent upon the defendants, under the circumstances, to show, before a recovery could be defeated, that the plaintiff had notice that it was diverted paper, or that there was some clear evidence of bad faith in his taking the paper.    American Exch. Nat. Bank v. New York B. & P. Co.,

148 N. Y. 698, 43 N. E. 168; Cheever v. Railroad Co., 150 N. Y. 59, 44 N. E. 701.

It is urged by the respondents that the case stands as one in which both parties submitted to the court, by their requests for the direction of a verdict, those questions which otherwise it would have been for the jury to determine; but no such question arises on this record. The court expressly declined to direct a verdict, and thereby left it to the jury. The court had decided that the case was one for the jury, and, after that decision, the plaintiff's counsel withdrew his motion for a direction in his favor; and the court did not act upon requests for a verdict, but dismissed the complaint for failure of proof on the part of the plaintiff, and, as we have concluded, erroneously.

The judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.