George R. Sutherland, Respondent, *v.* Charles H. Mead and Thomas Taft, Appellants, Impleaded with Maurice W. Deshong and Ernest Palleske, Defendants.

*Negotiable Instruments Law — an antecedent debt will sustain a transfer of an accommodation note, diverted from its purpose, only where such debt is discharged — effect of a certificate that the note is a genuine business note, etc.— such a note is enforcible only to the extent of the money advanced thereon — denial of a motion to vacate a judgment by default, when not a bar to one to reduce the judgment — a defense of fraudulent diversion of a note must be pleaded — judicial notice as to the purpose of the appointment of commissioners to revise the statutes.*

Section 51 of the Negotiable Instruments Law (Laws of 1897, chap. 612) which provides " an antecedent or pre-existing debt constitutes value," should be construed to mean that, for an antecedent or pre-existing debt to constitute value which will support an action against the accommodation makers or indorsers of a promissory note which has been fraudulently diverted, the antecedent debt must have been canceled and discharged on the acceptance of the note.

Where creditors of the payee of a promissory note indorse such note, upon the payee's agreement to have the note discounted and to deliver the proceeds thereof to the accommodation indorsers, the fact that such accommodation indorsers execute a certificate reciting that the note is a genuine business note given for value received and that there is no defense to the same either in law or in equity, will not, in the event of the payee's transferring the note and certificate to a person who pays therefor the sum of $150 cash, and, as further consideration, takes the same as collateral security for an existing indebtedness due to him from the payee, estop the accommodation indorsers from interposing the defense of the fraudulent diversion of the note to the extent that the holder thereof took it as collateral security for an existing indebtedness.

In the hands of such a holder the note is only enforcible to the extent of the cash payment made by him therefor.

Where, in an action brought to recover upon the note, judgment is entered against the accommodation indorsers by default for the full amount secured to be paid by the note, and the accommodation indorsers subsequently make a

motion to open the default and for leave to serve an answer, which motion is denied on the ground that the answer which accompanies the motion papers does not allege a defense to the note, in that it fails to aver the fraudulent diversion thereof, the denial of such motion is not a bar to a subsequent motion made by the accommodation indorsers, without leave of the court, to set aside the judgment or to modify the same by reducing the recovery to the sum of $150, based upon papers showing the fraudulent diversion of the note and the consideration paid by the plaintiff therefor, and that the accommodation indorsers were ignorant of such consideration prior to the time when the motion was made and where such moving papers are accompanied by a verified answer setting up such facts.

The fraudulent diversion of a promissory note constitutes an affirmative defense to accommodation indorsers which is not available unless it is pleaded.

The court will take judicial notice that the commission appointed to revise and codify the statutes was created, in the main, to codify existing laws and not to make new rules.

Appeal by the defendants, Charles H. Mead and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of November, 1902, denying the said defendants' motion to vacate and set aside a judgment theretofore entered against them in this action or to modify the said judgment by reducing the recovery to the sum of $150.

*Albert H. F. Seeger*, for the appellants.

*Edward Hassett*, for the respondent.

Hatch, J.:

This action was brought to recover upon a promissory note made by the defendant Deshong, upon which the appellants were accommodation indorsers. It appeared upon the hearing of the motion that the defendant Palleske was indebted to the appellants upon a promissory note for the sum of $1,000; that as such note was about falling due and on the 15th day of April, 1902, Palleske requested the appellants to accept in payment of such note the promissory note executed by Deshong, set forth in the complaint in the action; that they refused so to accept the same unless Palleske could procure it to be discounted and would deliver the proceeds thereof to the appellants, and for such purpose the appellants indorsed said note in their firm name and the defendant Palleske took the same

and agreed to return the proceeds thereof to the appellants.    Instead of discounting the note Palleske transferred the same to the plaintiff in the action who paid thereon the sum of $150 cash and as further consideration took and held the same as collateral security for an indebtedness then due and owing by Palleske to the plaintiff in a sum exceeding $3,000, the whole of which still remains due and unpaid.

This action was brought by the plaintiff to enforce the note ; all of the defendants made default in answering.    Judgment was thereupon entered by the plaintiff for the full amount secured to be paid by the note, with interest.    Thereafter the accommodation indorsers, the appellants herein, made a motion to open the default and for leave to serve an answer.    The court denied such motion upon the ground that the answer which accompanied the motion papers and which was proposed to be served as a defense to the note was insufficient for such purpose in that it failed to aver the fraudulent diversion of the note in suit, and for this reason the motion was denied.    It is clear that the court made correct disposition of such motion and placed the denial upon a proper ground.    There was no statement in the answer which raised any issue of a fraudulent diversion, consequently the plaintiff would have been entitled to judgment thereunder.    The fraudulent diversion of the note constituted an affirmative defense, and the defendants in order to avail themselves of it were required to plead the same.    (*Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Grant* v. *Walsh*, 145 id. 502.) Thereupon, without obtaining leave so to do, the appellants made a motion to set aside the judgment or in the alternative to modify the same by reducing the recovery upon the note in suit to the sum of $150, with interest thereon from the day of its date.    This motion was based upon the facts and circumstances connected with the delivery of the note to Palleske, as has been previously stated, and also upon an affidavit made by the plaintiff in the action that he had only paid to Palleske for the note $150 in cash and held the same as collateral security for the payment of a pre-existing debt. It was made to appear by the moving papers that the appellants herein were ignorant of the consideration paid by the plaintiff for the note prior to the time when the application was made to open the default when the affidavit was read.    Upon learning these facts

the appellants caused an answer to be prepared, setting up the facts and circumstances connected with the delivery of the note, the indorsement by the appellants, the fraudulent diversion of the same by Palleske and the consideration paid therefor by the plaintiff. This motion upon these papers coming on to be heard was denied, and from the order entered thereon this appeal is taken.

The motion to vacate or reduce the judgment was an entirely different motion from the one made to open the default. That was based solely upon the fraudulent diversion of the note and upon an insufficient answer to raise such question. The present facts were wholly unknown to the appellants at the time when the motion was made. The present motion is for an entirely different purpose, viz., to set aside the judgment based upon a state of facts, show- ing that the plaintiff was only entitled to enforce the payment of the note to the extent to which he had parted with value therefor, and upon the conceded facts he was not entitled to the judgment which had been entered, unless entitled to enforce the note for the full amount. These facts did not before appear and were unknown to the moving party. This application was accompanied by a verified answer setting up these facts. It is evident, therefore, that the motion was entirely different from the first motion, made for entirely different relief and was based upon papers which fully and completely set forth the appellant's defense. It was, therefore, properly made and the former motion was no bar to the court's entertaining the same.

It is said, however, that the Negotiable Instruments Law has changed the rule in respect to what constitutes consideration for a promissory note, it being claimed that a pre-existing indebtedness is a good consideration and renders the holder thereof a holder for value of a note taken as security therefor, as against accommodation indorsers, even though the note has been fraudulently diverted from the purpose for which it was given and the indorsers have received no value. Since 1822, when *Coddington* v. *Bay* (20 Johns. 637) was decided, it has been the settled law of this State that accommodation makers or indorsers of negotiable paper were not liable to a holder thereof where the same had been fraudulently diverted from the purpose for which it was made or the indorsement given and the holder had received it solely as collateral security for an antecedent debt. (*Comstock* v.

*Hier,* 73 N. Y. 269.) In other words, the surety has the right to impose such liability upon his obligation as he sees fit, and he is not to be made liable outside the terms of his engagement in the case of negotiable paper except for the benefit of a *bona fide* holder who parted with value and was misled to his prejudice. (*United States Nat. Bank* v. *Ewing,* 131 N. Y. 506.) Whatever may have been the rule with respect to this question in other jurisdictions, it has been the law of this State, uniformly enforced during this period of time, and still is the law unless the Negotiable Instruments Law (Laws of 1897, chap. 612) has changed the same. Section 51 of such act provides: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." Standing alone, this provision has not changed the existing law. It was always the law of this State that a consideration sufficient to support a simple contract constituted a good consideration for the instrument. This declaration, therefore, upon this subject added nothing whatever to the law as it existed and had existed from time immemorial. So, also, an antecedent or pre-existing debt constituted value and was sufficient in consideration of an instrument, either negotiable or otherwise, as between the parties thereto. Moreover, it was always the law that the actual payment and discharge of a pre-existing debt constituted the same a valuable consideration for the transfer of commercial paper and shut off prior equities existing against it. Such was the rule announced in *Coddington* v. *Bay* (*supra*) and has since been enforced by the courts of this State. (*Mayer* v. *Heidelbach,* 123 N. Y. 332; *Spring Brook Chemical Co.* v. *Dunn,* 39 App. Div. 130; *Blair* v. *Hagemeyer,* 26 id. 219.) There is nothing contained in this enactment, therefore, which has changed the rule of law respecting the consideration of commercial paper as it had previously existed, and the language of the statute is quite insufficient to annul the rule which has obtained with respect to the fraudulent diversion of commercial paper as against accommodation indorsers thereon. Such rule, therefore, cannot be considered as changed unless it be by virtue of the other provisions of the statute showing that such defense is cut off and indicating a clear intent to change the rule.

Section 52 of the Negotiable Instruments Law defines what con-

stitutes a holder for value: "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time." And by section 55 (as amd. by Laws of 1898, chap. 336) an accommodation party is made liable on the instrument to a holder for value, although such holder at the time of taking the instrument knew him to be only an accommodation party. Section 91 defines a holder in due course to be a person who has taken the instrument under the following conditions: "1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; 3. That he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Section 94 defines when the title is defective in the person who has negotiated the instrument, as follows: "When he obtained the instrument, or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Section 95 provides that the holder must have "actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." By section 96 the rights of a holder in due course are defined to be: "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." By section 98 it is provided: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

It is evident from these provisions that the Legislature did not intend to wipe out the defenses to a promissory note where the same had been procured from the maker by fraud, or where the indorsement had been given for a specific purpose, and a fraudulent diversion of the paper had been had. If the holder took the

same with notice of such facts or circumstances as charged him with notice, or if he parted with no value, it constitutes a good defense to such note. As the definition of value for a promissory note has not added anything to the law upon that subject beyond such as was previously recognized, we ought not to conclude that the Legislature intended to change the rule with respect thereto, nor to permit frauds to be perpetrated thereunder. When the Legislature defines a defective title it states in express terms that a fraudulent diversion is such. All of these sections can be harmonized in their entirety without any subtle refinement of reasoning by construing section 51 to mean that to constitute an antecedent or pre-existing debt a valuable consideration in support of a promissory note, that had been fraudulently diverted, as valid in the hands of a *bona fide* holder, the latter must have canceled and in legal effect paid and discharged the antecedent or pre-existing debt. By still holding the debt he in fact parts with no value. It was not intended thereby that, where a debt continued to remain in existence and enforcible as such, and the note is taken as collateral security for its payment, such debt undischarged constitutes a valuable consideration, or the holder of the note one in due course as against the accommodation maker or indorser, who has been defrauded by the negotiation of the instrument. We are not to impute to the Legislature an intent to change a rule of law which has existed in uniform course of enforcement for over three-quarters of a century without a clear and unequivocal expression so to do. The rules of law which have been laid down in England covering such question, or the reasons assigned for a different rule in other jurisdictions in this country, do not furnish controlling reasons for changing the law of this State so as to bring it into harmony with such views, in face of the fact that in the commercial center of this country these rules have been applied for this length of time without damage to business interests or harm to commercial usages, and during its operation a period of commercial activity and prosperity has existed heretofore unknown in the world's history. We may take judicial notice that the commission appointed to revise and codify the statutes was created in the main to codify existing laws and not make new rules; and certainly it was never intended that settled usages in respect of commercial paper, founded upon decisions covering a period of eighty

years and uniform in application, should be overthrown in the construction of ambiguous and obscure expressions used by such a body. The harmony of these provisions of the statute is in no measure disturbed by a construction which causes them to read that an antecedent and pre-existing debt must be paid and discharged in order to constitute the holder of commercial paper, which has been fraudulently diverted, a *bona fide* holder and, as such, capable of enforcing the same as against the accommodation maker or indorser. Merely taking such paper as collateral security for the payment of a pre-existing or antecedent debt does not constitute such debt value within the meaning of this statute. This matter does not seem to have been the subject of discussion beyond that had at Special Term in the case of *Brewster* v. *Shrader* (26 Misc. Rep. 480), where a different rule was laid down. The authority cited therefor in the opinion is contained in the reviser's note by the author of the law (See Crawf. Neg. Inst. Law, 30) in which it is stated that section 51 was designed to change the rule in *Coddington* v. *Bay* (*supra*), and the opinion of the late James W. Eaton, Esq., instructor upon the law of Bills and Notes in the Albany Law School, wherein he says in his published edition of the Negotiable Instruments Law (Eaton & Greene Neg. Inst. Law, 43) in referring to section 51 : " It is to be inferred that the above statute extends the New York rule to include instruments given merely as collateral security." We are not disposed to adopt this construction of the law. Settled principles ought not to be overturned by imputing a legislative intent where the language upon which it is based is equivocal in expression and when the language used which it is claimed changes the rule may be naturally harmonized with the decisions of the courts which have settled the law plainly and conclusively and with respect to which commercial dealings have been governed in this State for over eighty years. But even though we should be wrong in our construction of this statute, nevertheless it does not change the rule of law to be applied in the particular case. As we have seen, by section 98, above quoted, the burden is placed upon the holder of every promissory note fraudulently diverted to show that he, or some person under whom he claims, acquired title thereto as a holder in due course. Nothing which appears in these papers tends to controvert the fact that the note in question was fraudulently diverted.

The proof upon such subject, submitted in the moving papers, is clear and unequivocal   The answer sets it up as a defense.   Before the plaintiff, therefore, could recover he must show that he or some person under whom he claims acquired the paper in due course and without knowledge of any infirmity attending upon it.   Under the pleadings an issue of fact upon this question may be presented and these appellants are not to be made to suffer through the fraud that has been perpetrated upon them if the plaintiff had notice of such fact, and the appellants ought to have an opportunity to be heard upon this subject.

The doctrine of estoppel based upon the certificate executed by the appellants and delivered to the plaintiff that the note was a genuine business note given for value received; that there was no defense to the same, either in law or in equity, does not estop the appellants from interposing the defense of fraudulent diversion.   The certificate was in harmony with the facts.   It was genuine business paper executed for a particular purpose, and in the hands of a holder in due course may be enforced.   In order to constitute an estoppel *in pais* it must appear that the act which concludes the party was expressly designed to influence the conduct of another, and did so influence him, and when a denial of the act will operate to the injury of the holder.   (*Payne* v. *Burnham*, 62 N. Y. 69.)   Such is the doctrine of the cases cited by the respondent.   They are without application in the present case for the reason that the certificate can add nothing to the rights of the present holder of the note.   If the note had been delivered to him without consideration he could not have enforced it against these accommodation indorsers as he would not have been misled or injured by the certificate which was given.   To the extent that he parted with value he is entitled to enforce the note, with or without the certificate.   In holding it as collateral security for the payment of his pre-existing debt the certificate in nowise prejudices him as he has suffered nothing thereby and parted with no value on account thereof.

If these views be correct, it follows that the order should be reversed, and the judgment set aside upon payment of costs and disbursements of the action and $10 costs of the motion to the respondent, and defendants allowed to answer.   As the defendants, appel-

lants, however, admit liability to the extent of $150 interest and costs, the plaintiff in the action may, if he so elects, stipulate to reduce the judgment to such amount, in which event the judgment to that extent should be permitted to stand and be enforced. Ten dollars costs and disbursements of this appeal to the appellants.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and MCLAUGHLIN, JJ., concurrred.

Order reversed, with ten dollars costs and disbursements.