### REED v. SPEAR.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

**1. TRIAL—VERDICT—EFFECT.**

Where, at the close of the evidence, both sides moved for a directed verdict, any questions of fact or divergent inferences from the evidence are settled in favor of the party obtaining a verdict on the submission of the cause to the jury.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 400.]

**2. PROMISSORY NOTES—PRESENTMENT FOR PAYMENT—NOTICE OF DISHONOR—NECESSITY.**

Though, under Negotiable Instruments Law, § 136 (Laws 1897, p. 737, c. 612), providing that, when the person primarily liable on the instrument is dead and no place of payment is specified, presentment must be made to his personal representative, if any, if he can be found with reasonable diligence, a holder of a note not fixing a place of payment is excused from presenting the same for payment when the maker is dead and no representative has been appointed, yet notice of dishonor to the indorser must be made in compliance with section 160 (page 739) and section 143 (page 738), providing that a note is dishonored when presentment is excused and it is overdue.

[Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, § 1033.]

**3. SAME—NOTICE OF DISHONOR—SUFFICIENCY.**

A note provided for payment in installments on August 9, 1902, 1903, 1904, 1905. The maker of the note died a few days before the 1903 installment became due, whereupon a third person asked the indorser if he would pay the note. The indorser stated that he did not know the 1902 installment was unpaid, and proposed to pay on the payee throwing off that installment. Nothing was done in accordance with the proposition. It did not appear that the third person was the payee's agent. About a week after the maker's death the indorser obtained from the payee a copy of the note, and then learned that the 1902 installment was unpaid. The indorser never received any notice of dishonor. *Held,* insufficient to charge the indorser for the 1903 installment.

**4. SAME—PRESENTMENT TO ADMINISTRATOR OF DECEASED MAKER—DILIGENCE—SUFFICIENCY.**

Negotiable Instruments Law, § 136 (Laws 1897, p. 737, c. 612), provides that, on death of the person primarily liable on an instrument specifying no place of payment, presentment for payment must be made to his personal representative, if with reasonable diligence he can be found. On the day when an installment on a note became due, the holder went two or three times to the banking office of the administrator of the deceased maker to make presentment, but was unable to find him. He also sought him at a railroad station near the seat of his other business interests at a time when it might be expected he would be there. *Held* to warrant a finding that the holder exercised reasonable diligence to present the note for payment, and hence an indorser would be liable on receiving sufficient notice of dishonor.

**5. SAME—NOTICE OF DISHONOR—SERVICE—SUFFICIENCY.**

A notice of the dishonor of a note served at the indorser's store by delivering the same to his wife, who acted as assistant, is sufficient serv-

ice, especially where the indorser actually received the notice within the time allowed by law.

[Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, § 1140.]

6. APPEAL—VARIANCE—OBJECTIONS—SUFFICIENCY.

Where defendant merely objected to the admission of evidence because incompetent, he cannot on appeal raise the objection of variance between the complaint and the evidence.

Appeal from Chautauqua County Court.

Action by Charles M. Reed, as administrator of the estate of Emma J. Reed, deceased, against William N. Spear. From a judgment for plaintiff, and from an order denying a motion for a new trial, on the judge's minutes, defendant appeals. Modified.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Clare A. Pickard, for appellant.

James L. Weeks, for respondent.

HISCOCK, J. This case was brought on for trial before the county judge and a jury. At the close of the evidence each side moved for a direction of a verdict, and therefore any questions of fact or divergent inferences from the evidence are to be regarded as having been settled in favor of the plaintiff.

The action was brought against the defendant as indorser of a promissory note made by one Lamkin, dated at Sinclairville, Chautauqua county, N. Y., August 9, 1900, whereby said maker, for value received, promised "to pay Emma Reed, or bearer, Four Hundred Dollars and annual interest in the following manner to wit: $100 of the principal August 9, 1902; $100 August 9, 1903; $100 August 9, 1904, and $100 August 9th, 1905, the interest to be paid annually on the 9th day of August of each year; the undersigned to have the right to pay any part or the whole of said principal sum before the same shall become due." Recovery was sought with interest on the three installments of principal becoming due respectively August 9, 1902, August 9, 1903, and August 9, 1904. Upon the trial, plaintiff abandoned his claim as to the first installment, but recovered upon the last two. It is insisted by the defendant that such recovery was erroneous, that no proper or necessary evidence was given of the presentment or notice of dishonor of said note as to said installments, and that the evidence given by plaintiff tending to excuse him from presentment and notice of dishonor was incompetent and improperly received under his complaint.

We conclude that plaintiff has failed to establish the necessary notice of dishonor of said note as to said first installment, and cannot recover therefor, but that he established a right to recover as to the second installment embraced in the judgment.

Plaintiff having abandoned his claim to the installment becoming due August 9, 1902, we need not discuss that.

Lamkin, the maker of the note, died a few days before the installment of August 9, 1903, became due. A few days after the same became due, one Chessman was appointed administrator of his

estate. Emma J. Reed, the payee and owner of the note, died March 7, 1904, and subsequently plaintiff·was appointed her administrator. No place of payment being specified in the note, and the person primarily liable thereon being dead, and no personal representative having been appointed, the holder of the note was excused from presenting the same for payment of the installment becoming due in August, 1903, under the provisions of section 136 of the negotiable instruments law (Laws 1897, p. 737, c. 612), which reads as follows:

"Where the person primarily liable on the instrument is dead, and no place of payment is specified, presentment for payment must be made to his personal representative, if such there be, and if with the exercise of reasonable diligence he can be found."

But as we construe the statute, the holder of the note, although excused under the circumstances from presentment for payment, was not excused from giving notice of dishonor to the indorser. Section 160 (page 739) of the statute referred to provides:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given * * * to each endorser and any * * * endorser to whom such notice is not given is discharged."

Section 143 (page 738) provides that:

"The instrument is dishonored by non-payment when: (1) * * * (2) Presentment is excused and the instrument is overdue and unpaid."

These sections seem to make it clear that, although presentment for nonpayment may be excused under such circumstances as existed in this case, the indorser is still entitled to notice of dishonor of the instrument by its being overdue and unpaid.

No proof was offered of notice to the defendant indorser of the dishonor of the note as to this installment, except as the plaintiff seeks to have it supplied by inferences drawn from certain conversations with the defendant, but which we feel are insufficient for that purpose. There was evidence that, shortly before this installment became due, a conversation took place between the original holder of the note and the defendant, but none whatever of what was said in that conversation. Plaintiff also testified that in January, 1904, he went to defendant's store and told him in substance that his aunt, the intestate, was sick, and that he was anxious to have her settle up her. matters, etc. He asked defendant if he wanted to pay "that note," and the defendant said:

"No, he didn't. Now, about that first installment [the one of August, 1902], I didn't know but what it was paid, and, if I had, I should have pitched into Harry, and could have done something with him probably; but if she wants to throw off that first $100, I will pay the rest of it."

To this plaintiff replied that he would talk with his aunt about it and see what she wanted to do, and if she wanted to do that he would come back and talk with him in regard to it again. It does not appear that at this time plaintiff had any authority whatever to represent his aunt, or that he ever communicated to her defendant's proposition. As a matter of fact, no further communication was

had with the defendant in response thereto, and nothing was done in accordance with his proposition. It also appeared that, about a week after the maker's death, defendant went to the intestate's house and talked with her, and took a copy of the note or memorandum of it, and that was the first he knew that the first $100 had not been paid. The defendant testified absolutely that he never received any notice of dishonor of the note as to the installment in question, and contradicted the plaintiff in other respects. He also stated that he had no more reason to assume that the installment of 1903 had been paid than that of 1902. It is not urged that these conversations and statements amounted to a waiver by defendant of any obligation which rested upon the holder of the note to present the same for payment or to give notice of dishonor, but it is urged that they supply a sufficient basis for an inference against defendant that the proper steps had been taken to hold him liable upon the dishonor of the note as to the installment of August, 1903. As indicated, however, we think that the evidence is entirely insufficient for this purpose. The most that can be spelled out of defendant's statements and admissions is that he may have assumed or guessed that said installment had not been paid when it became due. But such conjecture upon his part is not at all equivalent to or a substitute for the notice which the statute required to be given to him of dishonor.

We pass to the consideration of the installment becoming due in August, 1904. At this time an administrator had been appointed of the maker of the note and also of the holder. The latter lived at Sinclairville, in Chautauqua county. The former resided at Fredonia, in said county, some distance from the former place, and connected therewith by railroad. At the time this installment became due he was, however, a member of a banking firm which had its place of business in Sinclairville, and was also interested in other business industries located in the same place, and was accustomed to spend more or less time in looking after said interests. Upon the day when the installment became due, plaintiff went two or three times to the banking office for the purpose of presenting the note to the maker's said administrator, but was unable to find him. He also sought him at the railroad station near the seat of his other business interests, and at a time when he might be expected to take or alight from a train, but did not find him. Having failed to find him at about 9 o'clock in the evening, he drew a notice, of which the following is a copy:

"Sinclairville, August 9, '04.

"T. W. N. Spear: Take notice that the last $100 installment of a note given to Emma J. Reed August 9th, 1900, by Harry Lamkin and endorsed by you fell due this day and remains unpaid at this hour of 9 p. m. and that I shall look to you for payment.     C. M. Reed, Admin. E. J. Reed, Est."

Upon the following day he sought to serve this notice upon the defendant at his store in Fredonia, but after one or more efforts, having failed to find him, delivered it, sealed and addressed, to defendant's wife in the store, who acted as his clerk and assistant. There is evidence that the notice was actually received by the de-

fendant upon the date of service, August 10, 1904. Upon this evidence the county judge was entitled, as a matter of fact, if not of law, to find a sufficient compliance by plaintiff with the provisions of the negotiable instruments law applicable to such a case.   Under section 136, already quoted, the obligation existed to make presentment of the note to the personal representative of the maker if "with the exercise of reasonable diligence he could [can] be found."   And, conversely, under section 142 (page 738), presentment for payment was dispensed with where the same could not be made "after the exercise of reasonable diligence."   Section 167 (page 740) provided that the notice of dishonor "may be in writing or merely oral and may be given in any terms which sufficiently identify the instrument, and indicate that it has been dishonored by non-acceptance or non-payment."   And such notice may be given by delivering it personally or through the mails, and may be given either to a party himself or to his agent in that behalf.   The evidence fairly warranted a finding that reasonable diligence was exercised by plaintiff in his effort to present for payment the note to Mr. Chessman as administrator of the maker of the note.   No question is raised but that the notice of dishonor was served in due time, and we think no question can be successfully made but that said notice was sufficient in form and properly served upon defendant's wife and agent, especially in view of the fact that notice actually came into defendant's possession within the time allowed by law.

It is urged upon this appeal that plaintiff's complaint was framed upon the theory that the note as to the two installments mentioned was duly presented for payment and due notice of its dishonor given, and that upon the trial plaintiff sustained his cause of action upon a contrary theory by showing that he was excused from making presentment of the note; that there was a variance between the pleadings and the proofs.   We do not consider it necessary to examine closely whether there was any such variance or not, because, upon the trial, evidence was given of the various facts, without any objection upon the part of the defendant which was sufficient to present this question, if it existed.   Objections were taken from time to time that some of the evidence was incompetent, etc., but no suggestion was made that the same was inadmissible under the pleadings because at variance therewith.   It is well settled that a party desiring to raise the objection of inadmissibility of evidence under the form of pleadings presented must do so plainly and distinctly, and that general objections which may apply to some other fault will not be sufficient to accomplish this purpose.   The defendant comes within this rule, and is not in position to sustain the complaint made in this respect.

The judgment and order reversed upon questions of law only, in so far as it allows a recovery for principal and interest of the installment becoming due August 9, 1903, and should be otherwise affirmed, without costs of this appeal to either party as against the other. Judgment accordingly.   All concur.