(174 App. Div. 291)

### A. E. McBEE CO., Inc., v. SHOEMAKER et al.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

1. TRIAL ⊜⊃177—VERDICT—MOTION FOR DIRECTED VERDICT BY BOTH PARTIES —EFFECT.

Where, at the close of the evidence, both parties move for a directed verdict, all questions of fact must be deemed to have been resolved in favor of the verdict thereafter rendered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. ⊜⊃177.]

2. BILLS AND NOTES ⊜⊃359—TRANSFER—BONA FIDE PURCHASER—CONSIDERA-TION—PRE-EXISTING INDEBTEDNESS.

The transfer of a note, not conditionally, or as security for an existing indebtedness, but in absolute payment thereof to the face value of the note, less $500 cash paid to maker, extends the time of payment of indebtedness until maturity of the note, which constitutes a good consideration for the transfer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 924–936; Dec. Dig. ⊜⊃359.]

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BILLS AND NOTES ☜358—BONA FIDE PURCHASER—CONSIDERATION—CONDITIONAL PAYMENT ON COLLATERAL SECURITY.

The indorsers without restriction as to the use of a note are liable thereon, even if the holder or his transferor accepted the note in conditional payment or as collateral security for an antecedent debt.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913–923, 961; Dec. Dig. ☜358.]

4. APPEAL AND ERROR ☜994(3)—REVIEW—CREDIBILITY OF WITNESSES.

The credibility of the uncorroborated testimony of an accommodation indorser that the use of the note was restricted to a specific purpose was for the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3904–3905½; Dec. Dig. ☜994(3).]

5. BILLS AND NOTES ☜497(2)—BONA FIDE HOLDER—LIABILITY OF INDORSER—SUBSEQUENT HOLDERS.

As against the indorser, whose defense is that the note was diverted from the use to which his indorsement was restricted, a holder may recover, notwithstanding the diversion, by showing that he or any prior transferee was a holder in due course, without showing title of all transferors.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1676, 1677, 1686, 1687; Dec. Dig. ☜497(2).]

6. BILLS AND NOTES ☜525—ACTIONS—EVIDENCE—SUFFICIENCY.

Evidence *held* sufficient to show that plaintiff received the note sued on in due course, before maturity for full value, and without notice that it was indorsed and delivered for a special purpose.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. ☜525.]

7. BILLS AND NOTES ☜365(1)—BONA FIDE HOLDER—SUBSEQUENT HOLDERS.

The bona fide holder of a note, without notice that it was indorsed and delivered for a special purpose, may recover against the indorsers, notwithstanding any defenses which would have been available against prior holders, who accepted the note in conditional payment or as collateral security for a pre-existing debt.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 944, 958; Dec. Dig. ☜365(1).]

8. BILLS AND NOTES ☜339—BONA FIDE HOLDER—LIABILITY OF INDORSERS—RESTRICTION OF USE—CONSTRUCTIVE NOTICE.

Notice of suspicious circumstances or knowledge of facts from which, on inquiry, the diversion of a note of a corporation might be discovered, will not defeat the right of one claiming to be a bona fide purchaser of the note, within Negotiable Instruments Law (Consol. Laws, c. 38) § 91.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 821–823; Dec. Dig. ☜339.]

Appeal from Trial Term, New York County.

Action by the A. E. McBee Company, Incorporated, against Robert E. Shoemaker and others. From a judgment for plaintiff, entered upon a verdict by the court, and from an order denying motion for a new trial, defendant named appeals. Affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

Frank E. Loughran, of New York City, for appellant.
John J. Quencer, of New York City, for respondent.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

LAUGHLIN, J.   [1] This is an action on a promissory note, and against appellant as indorser.   At the close of the evidence the attorney for plaintiff moved for a direction of a verdict, on the ground that the evidence material to the right of his client to recover, consisting of the testimony of the witness Lackey, was uncontroverted; and the attorney for the appellant thereupon, conceding that his client was liable for $500, but claiming that to be the extent of the liability, moved for a direction of a verdict for plaintiff for that amount.   Both parties thus submitted the facts to the court, and neither party attempted to withdraw the submission by requesting to go to the jury on any question of fact or otherwise.   It must therefore be deemed that all controverted questions of fact have been resolved in favor of plaintiff (Reed v. Spear, 107 App. Div. 144, 94 N. Y. Supp. 1007; Zeller v. Leiter, 114 App. Div. 148, 99 N. Y. Supp. 624), and this necessarily involves questions of fact involving the credibility of witnesses, although not controverted by other evidence.

The indorsement and delivery of the note by appellant were admitted, and due presentment and protest and notice thereof were proved.   The sole ground upon which appellant defended is that the note was diverted from the purposes for which it was made and for which he indorsed it, and that plaintiff failed to bear the burden of showing that it was a holder in due course, which rested upon it, on proof of diversion of the note.   The note was for $2,500, and was signed, "Root-Knight Co., Inc., M. J. Root, Pres., W. L. Smith, Treas.," and was payable 120 days after date to the order of "ourselves."   It was indorsed precisely the same as it was signed.   The appellant's indorsement was next, and after it were indorsements by said Root and Smith individually, and by one Van Nostrand, and by the plaintiff.

The appellant testified that he was a stockholder in and director of the maker of the note, and that at the request of said Root, the president, he indorsed it in blank, to be used to take up, by renewal, a like note which was soon thereafter to fall due at the Harriman National Bank, and that the note was not used for that purpose.   The plaintiff, with a view to showing that it received the note in due course before maturity—that is, for value and without notice that it had been indorsed by plaintiff for a special purpose, or that it had been diverted —in discharge of the burden then resting upon it (section 98, Negotiable Instruments Law), called as a witness one Lackey, who was the vice president of the Street Railways Advertising Company and also of the plaintiff.   He testified that the Scot-Mint Company was indebted to the Street Railways Advertising Company, and that he had been pressing payment of the claim; that Van Nostrand, who was also an officer of the maker, and said Root, both of whom were officers of the Scot-Mint Company, brought the note to him, representing that it *was owned by the Scot-Mint Company,* and requested that the Street Railways Advertising Company advance $1,000 on the note and apply the balance on the Scot-Mint Company account; that he refused to do that, but finally agreed that the Street Railways Advertising Company would take the note and pay $500 in cash and apply

the balance on said account, which would practically extinguish it; that the agreement was consummated, and at the request of Van Nostrand a check for the cash payment was drawn to the order of the Root-Knight Company and mailed to it *and charged to said account.*

[2] The evidence does not expressly show what credit entry was made on the Scot-Mint account; but, from the fact that the check for $500 was charged to that account, it would seem that the entire amount of the note was credited on the account, and, if so, the transaction having been, according to the testimony of Lackey, with the Scot-Mint Company, the latter company took the note, not conditionally or as security, but in payment of the indebtedness to the extent of the face value of the note, less $500, and thereby extended the time of payment of said indebtedness until the note fell due, which constituted a good consideration. Strong v. Sheffield, 144 N. Y. 392, 39 N. E. 330; Muir v. Greene, 191 N. Y. 201, 83 N. E. 685. The Root-Knight Company, in acknowledging the receipt of the check, stated that the balance of the note was to be credited on the Scot-Mint Company account. Lackey also testified that his company received the note before maturity, and without notice or knowledge of any kind with respect to the purpose for which the note was made or indorsed, or that it had been diverted; that the Street Railways Company transferred the note to the plaintiff, and that the consideration for the transfer was "the face value of the note." The secretary of the plaintiff testified that plaintiff received the note before maturity.

[3] Appellant, through his counsel, concedes that, if his indorsement and the delivery were without restriction as to the use of the note, he would be liable, even if plaintiff or its transferor took the note in conditional payment or as collateral security for an antecedent debt, and such is the rule of law. Sections 2 and 51, Negotiable Instruments Law; Grocers' Bank v. Penfield, 69 N. Y. 502, 25 Am. Rep. 231; Continental Bank v. Townsend, 87 N. Y. 8; Milius v. Kauffmann, 104 App. Div. 442, 93 N. Y. Supp. 669; Isaacs v. Cohn, 10 App. Div. 216, 41 N. Y. Supp. 779.

[4] The only evidence with respect to a restriction in the use of the note is the uncorroborated testimony of the appellant. The judgment can be sustained on the ground that his credibility was for the trial court, and that it does not appear that his testimony has been or should have been accepted as true. He was a stockholder and director, and his interest in the company was such that he was acting as accommodation indorser for it. Its relations with the Scot-Mint Company are not fully disclosed, but its letter heads show that it was advertising the business of the other company.

[5] The facts with respect to the transaction by which the Scot-Mint Company became the owner of the note were not brought out; but it was not necessary for plaintiff, on proof of diversion, to show the title of all prior holders. It is sufficient, to entitle plaintiff to recover the full amount of the note notwithstanding the diversion, to show either that it or any former owner was a holder in due course. Negotiable Instruments Law, §§ 98, 51, 52, 55, 91, 96; Sutherland

v. Mead, 80 App. Div. 103, 107, 80 N. Y. Supp. 504; Mindlin v. Appelbaum, 62 Misc. Rep. 300, 114 N. Y. Supp. 908.

[6] It is not necessary to rest affirmance on the ground that appellant did not satisfactorily bear the burden of showing that the note was diverted, for, assuming that it was diverted, the evidence fairly warrants the inference that the plaintiff received it before maturity, in due course, for *full value,* and without notice that it was indorsed and delivered for a special purpose, and, I think, that the Street Railways Advertising Company was also a holder in due course. The testimony of Lackey to that effect stands uncontroverted. The particulars with respect to "the face value" forming the consideration parted with by plaintiff on receiving the note were not drawn out. The argument in behalf of appellant is based on the contention that neither the plaintiff nor the Street Railways Company *parted with* any present or new consideration, other than the $500, on receiving the note, and that it was taken in *conditional payment* of, or as *security* for, an antecedent debt. If such were the fact, it is conceded that under the rule applied in the United States courts (see Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; B. C. & N. Rd. Co. v. Bank, 102 U. S. 14, 26 L. Ed. 61) and in many of the states there would be no defense; but it is contended that Coddington v. Bay, 20 Johns. 637, 11 Am. Dec. 342, and United States N. Bank v. Ewing, 131 N. Y. 506, 30 N. E. 501, 27 Am. St. Rep. 615, and kindred authorities holding the contrary, are still the law in this jurisdiction. This court in King v. Bowling Green Trust Co., 145 App. Div. 398, 129 N. Supp. 977, unanimously expressed the opinion that the Negotiable Instruments Law effected a change from the rule of Coddington v. Bay, supra, to conform the law here to the rule in the federal courts and in other states.

[7] It is true, as urged by counsel for appellant, that this court had theretofore held that there had been no change in the rule in this state. Sutherland v. Mead, 80 App. Div. 103, 80 N. Y. Supp. 504; Bank of America v. Waydell, 103 App. Div. 25, 92 N. Y. Supp. 666, affirmed on another point 187 N. Y. 115–119, 79 N. E. 857. See, also, Roseman v. Mahony, 86 App. Div. 377, 83 N. Y. Supp. 749, and Citizens' State Bank v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765. The former decisions are not cited, and the opinion in King v. Bowling Green Trust Co. shows that they were not considered. As we view the facts, that point is not presented for decision now, and should be left to rest on the existing decisions until it arises directly.

Since the plaintiff received the note before maturity, if there was a defense as against the Street Railways Advertising Company, it would not follow that it would be good against the plaintiff. It cannot well be argued on the evidence in the record before this court for review that either the plaintiff or the Street Railways Advertising Company took the note in conditional payment of, or as security for, an antecedent debt, for it merely shows that plaintiff paid full value for it, and what that consisted of was not brought out, and that the Street Railways Advertising Company took it for cash and in part

payment of an existing indebtedness. The reasonable inference from the evidence is that the Street Railways Advertising Company received the note for the $500 and in part payment *unconditionally* of the indebtedness owing to it by the Scot-Mint Company and not conditionally or as security, and therefore no defense good as against that company is presented. Wallabout Bank v. Peyton, 123 App. Div. 727, 108 N. Y. Supp. 42; Roseman v. Mahony, supra.

[8] It is further claimed, in effect, that Lackey, who represented the plaintiff in the transfer of the note to it, knew of the relations between Root and Van Nostrand and the Root-Knight Company and Scot-Mint Company. The facts with respect to such knowledge on his part were not very fully developed. The note was not payable to or indorsed by the Scot-Mint Company, and presumably Lackey knew that. He also knew that the check for the cash was drawn to the order of the maker. It is contended that these facts constituted notice to him, which was imputable to the plaintiff, that the note had been diverted; but manifestly, under the rule which now obtains, by which honesty and good faith are the tests and, not mere notice of suspicious circumstances, or notice or knowledge of facts from which, on inquiry, the infirmity might be discovered (see section 91, Negotiable Instruments Law; Cheever v. Pittsburgh E. R. Co., 150 N. Y. 57, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646; Cole v. Harrison, 167 App. Div. 336, 153 N. Y. Supp. 200; Oliner v. Goldenberg, 168 App. Div. 874, 154 N. Y. Supp. 612), such facts and knowledge are insufficient to show that plaintiff or the Street Railways Advertising Company was not a holder in due course. In fact, the contrary was conceded in appellant's motion for a direction of a verdict for plaintiff for $500.

It follows that the judgment and order should be affirmed, with costs. Order filed. All concur.