PAN-AMERICAN SECURITIES CORPORATION, Plaintiff, *v.* FRIED. KRUPP AKTIENGESELLSCHAFT, Defendant.

Supreme Court, Kings County, August 23, 1938.

*Abraham L. Pomerantz* [*Abraham Marcus, Julius Levy* and *Leonard I. Schreiber* of counsel], for the plaintiff.

*von Briesen & Schrenk* [*Charles H. Kelby* and *Fritz von Briesen* of counsel], for the defendant.

STEINBRINK, J. This is a motion for summary judgment in an action to recover the principal amount of 292 bonds issued by the defendant, a German corporation, in 1927, and which are alleged to have become due on February 1, 1937, by virtue of a call for redemption.

The bonds in suit were part of an issue of 60,000,000 reichsmarks, three-quarters of which were sold in Germany and the remainder in Holland on the basis of a Dutch prospectus. According to the complaint the defendant, by the terms of the bonds, promised to pay to the Dresdner Bank or its order interest at the rate of six per cent and the principal when called for redemption. The defendant was required to call a minimum number of the bonds for redemption on February first of each year by publishing a notice to that effect in a designated German newspaper and was permitted to call all of the remaining bonds for redemption on or after February 1, 1932, by publishing a notice to that effect in the same newspaper. The bonds also provided that the principal of all bonds redeemed prior to February 1, 1942, shall be at 102 per cent of the face amount. Payment of principal and interest was to be made at various places in Germany and in Holland, at the option of the holder; payment in Holland to be made in Dutch guilders at the rate of exchange on Berlin.

Plaintiff then alleges that it is the holder of the bonds in suit, having purchased them for value after their indorsement in blank by the original payee, the Dresdner Bank; that all of the outstanding bonds were called for redemption on February 1, 1937; that on

July 13, 1937, plaintiff duly presented all of its bonds and interest coupons for payment at one of the designated banks in Amsterdam, Holland; that payment thereon was refused, and that under the laws of the Netherlands there is now due the plaintiff from the defendant 342,917.54 guilders, which is equivalent to $188,947.56.

Apart from certain denials which will be considered during the course of this opinion, the answer contains twelve separate affirmative defenses. Under the first and second defenses, defendant alleges that plaintiff took an assignment of the bonds in violation of section 280 of the Penal Law, in consequence of which the alleged acquisition was void and no action thereon is maintainable.

After prohibiting corporations from practicing law or from holding themselves out to the public as being entitled to practice law, the mentioned section provides as follows: " It shall be unlawful further for any corporation or voluntary association to solicit itself or by or through its officers, agents or employees any claim or demand, or take an assignment thereof, for the purpose of bringing an action thereon or of representing as attorney-at-law, or for furnishing legal advice, services or counsel to a person sued or about to be sued in any action or proceeding or against whom an action or proceeding has been or is about to be brought, or who may be affected by any action or proceeding which has been or may be instituted in any court or before any judicial body, or for the purpose of so representing any person in the pursuit of any civil remedy."

It is defendant's claim that the plaintiff, in violation of the quoted portion of the statute, took " an assignment " of the bonds in suit " for the purpose of bringing an action thereon." The claim is predicated upon certain facts from which the inference is sought to be drawn that plaintiff is not the real holder of the bonds but simply an agency used by a group of European speculators to circumvent the Devisen Laws. The defendant directs attention to the fact that the bonds were acquired by the plaintiff at a time when it knew that payments thereon in Holland would be refused; that plaintiff was incorporated shortly before bringing a prior action against this defendant on other bonds of the same issue; that although plaintiff was incorporated to deal in securities it had never registered as such dealer as required by section 359-e of the General Business Law; that in its application for a warrant of attachment in this action it did not state that it had purchased the bonds for value, but merely that it was " the owner and holder " of the bonds in suit; and that contemporaneously with commencement by the plaintiff of the prior action, actions were commenced against defendant by various concerns under other bonds of the same issue in Holland, Switzerland and France.

The foregoing facts are not inconsistent with plaintiff's statement that it purchased the bonds in suit for value and that it alone is the owner and holder thereof. As opposed to the speculative inferences defendant seeks to have drawn, the moving affidavits disclose that plaintiff is the holder of bonds which were purchased for the sum of $75,277.50 from the Endgenoessiche Bank of Zurich, Switzerland. Annexed to the affidavits is a photostatic copy and translation of the original bill of sale. Plaintiff, through its president, goes on to say that it is the legal, as well as the equitable, owner of the bonds; that no one else is interested in them and that it alone is entitled to their proceeds. On the affidavit submitted there is no factual contradiction of plaintiff's purchase of the bonds in suit for value.

Did plaintiff contravene section 280 of the Penal Law by purchasing the bonds with knowledge that legal action would be required for their enforcement? The statute was designed, as its title indicates, to make it illegal for corporations to practice law. Before 1934 the statute merely prohibited a corporation from *soliciting* any claims or demands for the purpose of bringing action thereon. As judicially construed, it provided no defense to a party, a claim against whom was assigned to a corporation for the purposes of suit. (*Spencer* v. *Standard C. & M. Corp.*, 237 N. Y. 479.) To remedy this defect and to prevent circumvention of the spirit of the statute, there was an amendment in 1934, by chapter 534, section 3, which prohibited corporations from taking an assignment for the purpose of bringing an action thereon. Its obvious intent was to make it unlawful for corporations to enforce claims other than their own, to prevent them from practicing law under the guise of a naked assignment regular on its face, but executed solely for the purpose of suit on behalf of others. That the statute as amended was not intended to prohibit corporations from purchasing claims on their own behalf for value, and bringing actions thereon is made clear by the legislative distinction between an " assignment " and a " purchase," for at the same session of the Legislature section 274 of the Penal Law was amended, by chapter 534, section 1, to prohibit attorneys from *purchasing* demands for the purposes of suit.

It seems clear that when a corporation purchases a claim for value without reserving to the seller any rights therein, there is no basis for an inference that the corporation is thereby practicing law or is attempting to accomplish by indirection what cannot be directly accomplished under the statute.

Since defendant presents no facts in dispute of plaintiff's statement based upon supporting facts that it acquired the bonds in suit

on its own behalf for value, section 280 of the Penal Law is wholly inapplicable and the defenses based thereon must fall.

By the third affirmative defense it is alleged that the bonds in suit are not payable by reason of the fact that they had not been presented for payment prior to the commencement of this action. Plaintiff's proof discloses that due presentment was made and payment refused before this action was begun. No contradictory proof is offered. The defense is consequently disregarded.

The fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh affirmative defenses are all based upon German foreign exchange laws, popularly known as the Devisen Laws, defendant claiming that they are applicable to the bonds in suit and that by virtue of such applicability this action may not be maintained.

The Devisen Laws, in so far as pertinent, may be summarized as follows: They include the statute proper enacted February 4, 1935, and a series of regulations and ordinances issued thereunder. Their function is to submit all German foreign exchange transactions to the supervision of the German government. Their effect is to impose restrictions on certain classes of foreign investments. No currency may be taken out of Germany without permission of the German government. In that sense all accounts in Germany are deemed " blocked." Under the Devisen Laws all resident German creditors receive the full amount of their investments, whether the investment was made in Germany or in a foreign country. This is so because as to them there is no classification of the reichsmark. As to non-residents a distinction is drawn between " free reichsmarks " and " blocked reichsmarks." The former may be purchased at the prevailing rate of exchange, and when purchased may be freely used within Germany. With government permission " free reichsmarks " may be used to purchase foreign exchange. When used to purchase securities the non-resident becomes entitled on their sale or redemption to " free reichsmarks." The " blocked "-marks accounts embrace all deposits by non-residents in the country prior to June 15, 1931, and all moneys resulting from the sale or redemption of securities owned by such non-resident or his predecessor in title prior to June 15, 1931. The use of such " blocked " marks is restricted. If they represent the proceeds from the sale or redemption of securities, they may only be used to purchase other German securities. Such restricted accounts are termed " security blocked marks," and because of the serious limitation in their use their value ranges between ten per cent and twenty-five per cent of their face value.

Defendant adverts to the fact that the bonds in suit were purchased on behalf of four banks located in Holland through the

agency of three German banks on the Berlin Stock Exchange, and that payment therefor was made in "blocked marks." By reason thereof the defendant asserts that plaintiff is entitled to payment only in "blocked marks" in accordance with the Devisen Laws rather than in Dutch guilders in accordance with the terms of the bonds.

While the Devisen Laws are plainly intended to discriminate against non-resident German creditors to the undeserved advantage of resident German debtors, and as such are highly repugnant to our sense of honor and decency and reflect financial sadism at its worst, inquiry must first be directed to the applicability of these laws to the bonds in suit.

Defendant takes the position that its obligations under the bonds are limited by the Devisen Laws, asserting that these laws apply by agreement of the parties to the bonds. While the agreement was not expressed, defendant says it is to be presumed from the terms of the contract and the relevant surrounding circumstances. Defendant points to the contract itself which is printed in the German language, to the obligation to pay in the terms of reichsmarks, to the fact that the defendant is a German corporation, to the fact that the entire issue was purchased by the Dresdner Bank of Germany, to the fact that the bonds are redeemable for the most part in German banks, to the fact that the underlying security is situated in Germany and that in connection therewith the Dresdner Bank was appointed representative of all the bondholders, to the fact that the drawing for redemption was to be made in Germany, to the fact that the period of prescription within which the coupons must be presented is determined by German law, to the fact that the procedure relating to the invalidation of lost bonds is prescribed by German law, to the fact that publication of notice in certain German newspapers suffices for all purposes, and finally to the fact that there is specific reference to the bonds to the German law of December 9, 1899. None of these facts, whether they be considered singly or collectively, suggest that the place of performance is exclusively in Germany. Indeed, the contract very plainly provides that at the option of the bondholders payment may be exacted either in Germany or in Holland.

Defendant cites no New York authority in support of its proposition that the "proper law" of the contract is German law, regardless of the fact that performance was exacted in Holland. Had the defendant done so it would have been compelled to admit that by the rule of conflict of laws of this State all matters connected with the performance of a contract are regulated by the law of the place where the contract by its terms is to be performed. (*Union*

*Nat. Bank of Chicago* v. *Chapman*, 169 N. Y. 538, at p. 543; *Lann* v. *United Steel Works Corp.*, 166 Misc. 465, at p. 470; Restatement of the Law of Conflict of Laws, § 360.) In this case the plaintiff by demanding payment in Holland fixed that country as the place of performance. (*Lann* v. *United Steel Works Corp., supra.*) In an attempt to avoid this result, defendant argues that under the terms of the bond contract payment is to be made in Germany, not in Holland. Through one of its experts on German law defendant cites the German Civil Code, which provides that the place of performance of a contract is assumed to be at the debtor's domicile and where the debtor is a corporation at its place of business. Defendant admits, however, that the rule applies only where the parties themselves have not agreed upon a place of performance other than the debtor's domicile. Here the parties have agreed that the place of performance is to be left to the bondholder's choice, depending upon whether a choice is made to demand payment in Germany or in Holland. But, asserts the defendant, the term " payment " has a meaning quite different under German law than that prevailing under American law. A distinction is drawn between the American concept of payment as the discharge of an obligation and the German concept as the transmittal of money to the creditor. On the one hand, it is said delivery into the hands of the creditor is required, and on the other, the mere act of sending effects the discharge of the debtor's obligation. The attempted distinction is not borne out by the cited provisions of the German Civil Code, which provide that the " mere circumstance that the debtor has assumed the expense of transmittal " does not mean " that the place to which transmittal is required to be made is the place of performance." The provision has no application to the facts of this case, for here by the " Terms of the Loan " printed on the bond it is provided: " Article 2. * * * The interest will be paid (' ausgezahlt ') against the delivery of the matured interest coupons: (a) in Germany. (b) in Holland: * * * Article 4. The redemption (' Einloesung ') of the bonds shall take place free of charge at the payment offices (' Zahlstellen ') mentioned in section 2 against delivery of the bonds and of the interest coupons not yet matured and of the coupon renewal certificates belonging thereto. Article 5. In Holland the payment (' Zahlung ') is made at the exchange rate on Berlin."

The word " paid " is translated from " ausgezahlt," the word " redemption " from " einloesung," and the word " payment " from " zahlung." Defendant's expert translates " ausgezahlt " into " paid out " or " cashed " and the word " zahlung " into " cashing." There is thus no factual dispute in the translation, for, under the

circumstances, there can be no real distinction between " paying " and " cashing." They are both descriptive of the same act, namely, conversion of the bonds into money and receipt of such money by the bondholder. The bonds say nothing of " transmittal " or " sending," and defendant cannot, by reading into the bonds terms not therein contained, create a factual issue as a springboard for the application of German law. Furthermore, the defendant's counsel, without qualifying himself as an expert in German law, proceeds to state his opinion regarding the interpretation to be given to such law despite the fact that defendant's own expert has discreetly failed to do so. The expert's failure to state his own opinion is perhaps explained by a decision of the Reichsgericht (the German court of last resort) of November 14, 1929, IV, 665 /28, vol. 126, p. 196, of the Official Reports of the Reichsgericht. There the city of Vienna had issued its bonds subject to the right of redemption. Payment of interest and principal were to take place in Vienna or, at the option of the bondholder, at Zurich, Switzerland, or at other designated places at fixed rates of exchange. Pursuant to a special Austrian statute authorizing discharge of the obligations under the bonds by depositing the money due with an Austrian depository, the city of Vienna published a call for redemption expressly referring to the Austrian statute. Plaintiff demanded payment in Swiss francs in Zurich. The city of Vienna contended before the Kammergericht (the lower court) that Vienna alone was the place of performance and that the other designated places were to be deemed simply paying offices. The contention was rejected and the place of performance was fixed at Zurich. In affirming this determination the Reichsgericht said: " Conceivable it is that an alternative currency clause merely purports to secure the creditor against fluctuations of exchange and that for the rest it purports to render more convenient the payment at the foreign places so that no place of performance is established there. *The Kammergericht, however, considers the foreign places at which payment is promised not as places of payment but as places of performance.* It gives this reason that in the text of the bonds no distinction is made between the paying office in Vienna and the paying offices abroad, that especially the function of the foreign redemption offices has not been confined to a definite period beginning from the dates of maturity, that at each paying office payment was offered in the currency there in force, and it finally observes that defendant's intention was to win over foreign investors. This reasoning is free from error." (Italics the court's.)

It must be apparent that even under German law the place of performance of the bonds in suit is Holland, the place where pay-

ment was demanded, unless there is validity to the defendant's further argument that the bond contract provides that if any alternative method of performance provided therein shall thereafter be prohibited by German law, such prohibited German alternative shall be omitted from the contract. Defendant directs attention to section 265 of the German Civil Code, which provides in substance that if one of the alternative acts of performance becomes impossible in consequence of a circumstance for which the obligor is not responsible, the obligation is limited to the permitted acts of performance. Since under the Devisen Laws payment in Dutch guilders in Holland is not permitted, defendant concludes that the only obligation remaining is to pay in Germany. The vice of the argument is to be found in the premise that there must be resort to the laws of Germany to determine whether the excuse for non-performance based upon supervening illegality is valid. The premise is false for, as was pointed out above, all matters connected with performance are regulated by the law of the place where the contract is to be performed.

Defendant argues further that the Devisen Laws operated to limit the obligation under the bonds in suit because at the time of their purchase by the Dutch banks the bonds were physically present in Germany. Defendant cites the familiar rule that " the validity and effect of a transfer of a negotiable instrument are determined by the law of the place where the instrument is at the time of its transfer." (Restatement of the Law of Conflict of Laws, § 349.) It then attempts by labored argument to prove that the " validity and effect " of a *transfer* embraces the " validity and effect " of the *instrument* itself. To uphold this theory would mean a distortion of the plain meaning of words and an abandonment of the firmly established rules of the conflict of laws relating to the laws applicable to the interpretation and performance of contracts. The argument is as lacking in merit as the Devisen Laws sought to be invoked are dishonest. The rule above quoted relates to the validity and effect of *transfers* and no amount of mental jugglery can expand its scope to mean anything more. According to the defendant's own version of the facts, the bonds in suit were purchased on behalf of certain Dutch banks on the German Stock Exchange through the agency of three German banks. Payment was made in " blocked " marks and the bonds shipped to Holland. Payment in " blocked " marks was specifically authorized by the Devisen Laws; shipment of the bonds to Holland was effected only after the requisite permission was obtained from the German Foreign Exchange Control Office. All of this was long after 1927, when the bonds were originally issued. There was nothing in the

Devisen Laws (here proved as a fact) which operated to reserve any interest in the bonds to the seller or to create in the obligor, not a party to the transfer, any new interest therein. On the facts presented, the transfers were in all respects regular. They vested in the purchasers all of the rights and interests inherent in the bonds.

Defendant asserts that since the plaintiff is not a holder in due course of the bonds in suit all of the defenses available to it against the original payee, the Dresdner Bank, may be asserted against the plaintiff. These defenses are:

(1) All moneys required for redemption of the bonds having been deposited with the Dresdner Bank, the latter could have no cause of action on the bonds against the defendant. But article 4 of the bond contract provides for redemption against delivery of the bonds. The court is unable to understand how deposit of the redemption money without surrender of the bonds to be redeemed can in any way affect the bondholders whether they be holders in due course or not. It is simply a case of payment made to the wrong party, for under the terms of the bond contract the defendant's obligation is discharged only by payment to the bondholder upon presentment of the bond.

(2) The Dresdner Bank was appointed representative of the bondholders for certain purposes and as such representative received from the defendant the money required for redemption of the bonds. But the bank was designated a representative only with respect to the hypothec. By the terms of the bond contract the personal rights of the bondholders were specifically reserved to them.

(3) The Dresdner Bank, as a German institution, is subject to the Devisen Laws, which may, therefore, be invoked against the plaintiff. By the defendant's own admission the bonds in suit were purchased for value in Germany before maturity. There is no claim that the purchasers, the Dutch banks, were not holders in due course. Having purchased from holders in due course plaintiff took the bonds free of all defenses that might have been asserted against the original payee. (Neg. Inst. Law, § 97; *Horan* v. *Mason,* 141 App. Div. 89.) Whether plaintiff took the bonds after their maturity is quite immaterial. (*McBee Co., Inc.,* v. *Shoemaker,* 174 App. Div. 291.) The fact that the plaintiff acquired these bonds after their due date or that it seeks by its purchase to make a " huge speculative profit " is no concern of the court on a motion for summary judgment, for the answer to such arguments is that if the plaintiff seeks to make a huge speculative profit, so too the defendant seeks to make a still greater profit by paying or compelling the plaintiff to accept payment in a depreciated currency.

456

The further argument that the notice of redemption imposed on the defendant an obligation to redeem only in the manner sanctioned by the Devisen Laws is wholly without merit. As was said by this court in *Lann* v. *United Steel Works Corp.* (*supra*, at p. 469): " The argument is entirely fallacious, for it assumes the very issue in proof, namely, the applicability of the German foreign exchange laws to the bonds in suit. It is based upon a premise patently false that the gravamen of the plaintiff's action is not the bonds but the notice of redemption. The notice of redemption, however, did not create any new obligation on the part of the defendant. It simply served to accelerate the date of payment. Upon execution and delivery of the bonds the rights and obligations of the parties were fixed. Those rights and obligations cannot be affected by a call for redemption, which is not an independent promise to pay but only a notice to the bondholders that they would be entitled to payment at the accelerated maturity. (*Smyth* v. *United States, United States* v. *Machen,* 302 U. S. 329.)"

The defense of illegality or impossibility of performance must be decided by the domestic laws as distinguished from the conflict of laws of Holland. (*Lann* v. *United Steel Works Corp., supra.*)

On the papers submitted there is no dispute concerning the fact that under the domestic laws of Holland the German restrictive legislation affords no excuse for non-performance. Since the plaintiff, in the proper exercise of the option provided by the bonds, demanded payment in Amsterdam, Holland, it was entitled to receive such payment in guilders based on the rate of exchange on Berlin, and is now entitled to judgment in American dollars for the equivalent of such guilders.

Plaintiff's motion for summary judgment is granted in the sum of $188,947.66, with interest and costs.